## STATE v JOHNSON

Ohio Appeals, 2nd Dist, Greene Co

No 432. Decided April 17, 1937

Marcus E. McCallister, Prosecuting Attorney, Xenia, for appellee.

Harry B. Becker, for appellant.

## OPINION

By GEIGER, J.

On December 15, 1936 the defendant was tried and convicted of burglary on an indictment charging that on the night of October 29, 1936 he broke into the chicken house of Mrs. Fannie Gordon and stole therefrom a number of chickens, about thirty in all. A motion for new trial was made and overruled and the defendant was, on January 7, 1937, sentenced to the penitentiary. His motion for new trial sets forth the usual assignments of error incident to criminal cases. Defendant filed his appeal in this court and here urges that certain errors were committed by the court below for which the judgment should be reversed.

We have given this case minute examination and while we are not able to go into detail on all the points involved, we have examined it with care in an endeavor to find any errors that may exist that were prejudicial to the rights of defendant.

There were a great many witnesses in this case, not so many to the actual transactions incident to the burglary, but many as to the good character of the defendant, as well as to an alibi sought to be established by him.

The witnesses upon whose testimony the State chiefly relied were three boys who were participants in the burglary and who

confessed that they had entered the chicken house and stolen the chickens in the night season. They all assert that they were accompanied by the defendant, Al Johnson. Two admit that they had been engaged in other depredations which brought them into court and of some of which they were convicted. These three young men were Arnold Birt, 18 years of age, Edward Cotterman, 18 years of age, both residing in Dayton, and Asa Reed, 19 years of age, residing in Hamilton. Of these three boys Birt was the one who had known the defendant for several months, the other boys meeting him through Birt on the afternoon of October 29, the date of the burglary. There were incidental witnesses proving the ownership of the chickens and testifying as to their identity.

The defendant asserts stoutly that he should not be convicted upon the testimony of these three boys, who had confessed that they themselves had been implicated and it is strongly urged that Birt, the leader, was a confessed perjurer and had been involved in many misdemeanors. After carefully scrutinizing the testimony of these boys we are impressed with the fact that their stories are in substantial harmony and as a matter of fact, outside the fact that Johnson denies having been with them at the time of the burglary, their testimony links in quite well with that of Johnson himself.

The incidents testified to took place either at the Village of Enon, Clark County, or within a short distance thereof. Inasmuch as distances are closely related to the question of alibi, it might be well to note that Mrs. Gordon's farm was near the Clark County line, three miles from Enon and one or possibly two miles from Snyderville, a small village in which the defendant, Johnson, resided. The village of Medway was eight miles away and Springfield about the same distance. While there were many alibi witnesses, it might be well to examine Johnson's own statement of his movements on the afternoon and night of the 29th of October.

The occurrence which stands out in the testimony of all the witnesses, fixing their attention upon October 29, was an entertainment at the school house in Enon and some carnival performances near the school house. Johnson had at his disposal and used that night a Chevrolet car which could carry him over the distances quite swiftly. Johnson testifies that he is 26 years old and had some education as an electrical worker and recited that at about one

o'clock P. M., on October 29th, Arnold Birt came to his house at Snyderville and requested the loan of $8.00. There were with Birt at the time two other boys, now however, the two other defendants. Johnson did not have the money to lend and there was some negotiation between the two for an exchange of cars. Not being able to make a deal, Johnson told Birt he had a friend, McVay, at Beatytown and at Johnson's suggestion Birt drove his car to Beatytown, arriving at about two o'clock P M. Some negotiations were had as to the exchange of the car for one owned by McVey, but this failing, Johnson testifies that Birt drove him back to his home and left with the other boys at about 3:30 o'clock P. M. and that was the last he saw of them. Later in the evening Johnson was visited by a friend, Smith, who wanted to be taken to Enon to get his car at Del Arthur's garage. He left home with Smith about 7:15 o'clock P. M. Mr. Arthur was the Mayor of Enon and asked Johnson to be on duty service that night at the Enon school and Johnson agreed to be there. Smith left Beatytown and Johnson then visited the home of a lady friend about one-half mile below Enon, towards Snyderville, arriving there at 7:30 o'clock P. M. and leaving at 7:50 o'clock P. M., stating to her he could not be down that night because he had to work at Enon for the Mayor. From there he went to Baines' Filling Station and Beer Parlor on Route No. 4, less than a mile from Enon. There he met Smith and a number of others and sat down and drank beer and finally left, stating in his testimony, "to be exact it was around the vicinity of 9:40." He stated that he had to go to the school house to fulfill the requirement of the Mayor. He went to his home, one-fourth mile from Baines', to get his coat and cap, arriving back at Enon at five minutes after ten, where he found a large number of people. There had been a carnival at Enon in addition to the entertainment in the school. He met a number of boys. He did not go into the school but walked about it. At that time a Buick drove up with Birt and two others and he talked with Birt. He testifies that Birt asked about the farmers being in town and apparently endeavored to convey the impression that Birt was inquiring of him whether or not the coast would be clear for Birt's burglary in the vicinity of Enon. The Birt car then left and that was the last he saw of it. He went around the school three or four times and left at 11:45 o'clock P. M. while some

of the people were still coming out. He states that he had an appointment with William McVey at McVey's home at 704 E. Pleasant Street, Springfield, where he had agreed to change an electric meter so as to prepare the place for a party to be given by his girl and McVey's wife on Saturday. He tells that he had to buy some parts for the meter on Friday and that McVey was to help put them in on Saturday. Incidentally, McVey testifies that he had an understanding that Johnson was to come there in the early part of the evening but McVey himself did not arrive home until 11:00 o'clock P. M. Johnson says that he arrived at McVey's shortly after twelve o'clock midnight and was five or ten minutes getting McVey to come to the door. He measured the meter wiring and remained there from one-half to three-quarters of an hour. He left McVey's at 12:40 o'clock A. M. and went to Dad's Hamburger Place on West Main Street, where he arrived five or ten minutes after one o'clock and stayed there three-quarters of an hour, leaving between 12:30 and 12:45 A. M. Of course, this could not be correct; he probably meant he left between 1:30 and 1:45 A. M. From there he went home, arriving, according to his mother, about two o'clock A. M. He states that he was at the school house in Enon between ten o'clock and maybe 11:45, but that he would not be sure whether he was there a little earlier or later. He left the school house close around the hour of twelve, midnight.

There were a number of witnesses at each of the places where Johnson stopped, who testified as to his presence there on the day and hour that Johnson himself indicated. As to Johnson's movements, it becomes at once apparent that in at least three points of contact he was with at least one of the boys confessing the burglary. His own movements after nightfall were quite erratic. He stayed home until 7:15 o'clock P. M., then went down to his lady friend's and told her he had a job watching the school; then he went to Baines' and stayed there until ten o'clock P. M., arriving at the school shortly after ten o'clock P. M., where he remained until 11:45 P. M. or possibly midnight, during which time he met Birt in Birt's automobile.

The story is not convincing that he had a date with McVey to measure some electric wiring and went to Springfield, arriving there between midnight and one o'clock in the morning and from that point went to Dad's Hamburger Place, where he stayed three-quarters of an hour. As a watchman engaged by the Mayor to guard the school property he was not very diligent, in that so far as he knew the activities about the school began at seven o'clock P. M. or a little after, yet he drank beer for one and one-half hours in Baines' Beer Parlor and did not arrive at the school until after ten o'clock P. M.

It is quite clear that the alibi was rather clumsily contrived; that it involved strange movements at unusual hours and that it was bolstered by doubtful testimony of friendly witnesses. One matter that appears rather unusual is that in the examination of each alibi witness, practically the first question was: "Calling your attention to the evening of October 29th of this year, did you see Al Johnson?" Of course, time being highly important in the proof of an alibi, it was unusual that the first question addressed to these witnesses called their attention to October 29. One witness at Dad's Hamburger Place testified he knew that it was the 29th of October because it was near Hallowe'en and his car had not yet been "soaped."

Without going farther into detail it is quite evident that the defendant had ample opportunity to go the short distance from Enon to Mrs. Gordon's place and to travel about as was testified by the boys who were in the car with him, and still be seen by many who would testify to his presence at a particular point during the evening. His alibi is not convincing.

As to the fact that the boys who testified admitted that they themselves had participated in the offense and as to the attempt to account for their testimony by the assertion that they had a grudge against Johnson because he refused to lend them the money, we are not impressed with such argument. We conclude that there was ample evidence to support the verdict of "guilty" and that the attempted alibi did not account for all the available time.

As to the character witnesses, one would get the impression that they were damning Johnson by faint praise. We are, therefore, not of the opinion that there should be any reversal of this judgment on account of any evidential matters.

Complaint is made of the charge of the court in reference to the weight to be given to the testimony of accomplices. Counsel points out that the court said at page 236: "You should bear in mind that

they were accomplices," and urges that if they were accomplices of the defendant, he must be guilty. Counsel does not quote the entire charge of the court and there is a very important omission.

The court may have called them accomplices but he did not say they were accomplices of Al Johnson and did not say that Al Johnson participated in the crime, but was only charged to have committed it. The charge is not as smooth and clear as it might be. A better statement may be found in Weygandt's Jury Charges, §§2386-2391. We see no prejudicial error in this charge.

Criticism is also directed to the charge of the court on possession of stolen property. The court charges:

"The jury would be justified, if you are convinced from the evidence in that case that a part of the chickens belonging to Mrs. Gordon a short time afterwards were found at the home of the defendant, in finding from that fact, if it is not explained otherwise, that he participated in the act of breaking and entering the chicken house."

We believe the court mis-stated the law upon that point. Without quoting it further a correct charge may be found on page 521 of Weygandt's Jury Charges and also in 19 Oh St 363. If the possession of the chickens was the sole or an important element of fact in this case we might be justified in making this erroneous charge the basis of a reversal, but the finding of the chickens at the home of Johnson's mother is such a minor incident that we feel justified in resorting to the very pertinent section of the statute covering such slight and inconsequential matters.

Sec 13449-5 GC provides that a new trial shall not be granted or the verdict set aside "for any misdirection of the jury unless the accused was or may have been prejudiced thereby." We do not believe that the defendant was or could have been prejudiced by this charge.

We feel bound to dismiss the appeal and remand the case for proper procedure in the court below.

BARNES, PJ, and HORNBECK, J, concur.

## ON APPLICATION FOR REHEARING

Decided May 21, 1937

By THE COURT

The defendant appellant makes application for rehearing for the following reasons:

(1) Because he has not been allowed or granted all his constitutional rights.

We do not know of any such rights of which the defendant appellant has been deprived and none are pointed out in the application.

(2) Because the court did not take into consideration the variances between the indictment and the proof thereof.

The court considered all the matters brought before it by the bill of exceptions or the brief of counsel.

(3) Because this court held that the errors complained of were minor, whereas they form the basis of the prosecution of the defendant.

The only point that we considered as "minor" was the error in the charge of the court in reference to the inference that could be drawn from the finding of the chickens at the home of the defendant appellant. This we think falls within the provisions of §13445-5 GC. This section is also pertinent to the second ground of the application.

Application denied.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.

## ON MOTION TO CERTIFY

Decided May 21, 1937

By THE COURT

The appellant moves the court to certify the record in this case to the Supreme Court, on the ground that it is in conflict with the judgment of the Court of Appeals of Cuyahoga County, in the case of Knight v State, 1 Abs 520.

In the judgment of this court there is no such similarity between this case and the case referred to, which would permit us to certify the record in this case as in conflict with the Cuyahoga County case.

Motion overruled.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.